**Ex parte Johnny STEPTOE, Applicant.**

Nos. 74938, 74939.

Court of Criminal Appeals
of Texas, En Banc.

April 21, 2004.

Johnny Steptoe, Pro Se.

Roe Wilson, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for State.

PER CURIAM.

These are post-conviction applications for writs of habeas corpus under Article 11.07 of the Code of Criminal Procedure. The applicant was convicted of the felony offenses of aggravated sexual assault and kidnapping, and punishment was assessed at imprisonment for fifty years and five years, respectively. He appealed, and his convictions were affirmed. *See Steptoe v. State*, Nos. 14–94–00200–CR and 14–94–00201–CR, 1996 WL 87202 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

The applicant claims that he was denied an opportunity to file petitions for discretionary review because his appellate attorney did not timely notify him that he could

seek discretionary review *pro se*. The trial court found from the attorney's affidavit that counsel failed to specifically and timely notify the applicant that he could file *pro se* petitions for discretionary review by the Court of Criminal Appeals. The Applicant is entitled to relief. *See Ex parte Wilson*, 956 S.W.2d 25 (Tex.Crim.App. 1997).

We grant the applicant relief in the form of leave to file petitions for discretionary review of the decisions of the Court of Appeals.

Time limits under the Rules of Appellate Procedure shall be calculated as if the Court of Appeals' decisions had been rendered on the day the mandate of this Court issues. Should the applicant desire to seek discretionary review, he must take affirmative steps to see that his petitions are filed in the Court of Appeals within thirty days of the day the mandate of this Court has issued.

The applicant's remaining claims are dismissed. *See Ex parte Torres*, 943 S.W.2d 469 (Tex.Crim.App.1997).

PRICE, J., filed a concurring opinion.

COCHRAN, J., filed a dissenting opinion, in which KEASLER, J., joined.

KELLER, P.J., and HOLCOMB, J., dissented without opinion.

PRICE, J., filed a concurring opinion.

I agree with the majority that we should allow the applicant to file an out-of-time petition for discretionary review. I write separately to explain why I think that the doctrine of laches should not apply to this case. The facts of this case are distinguishable from *Ex parte Carrio*[1] because the State did not argue that the applicant's claims should barred by the doctrine.

1. 992 S.W.2d 486 (Tex.Crim.App.1999).

In *Carrio*, we held that the doctrine of laches may apply in an appropriate case. In that case, the State argued that, because of the appellant's fourteen-year delay in bringing his claims of ineffective assistance of counsel, the applicant should be barred from having the merits of those claims decided.[2] The State claimed that its ability to respond to the Carrio's claims was prejudiced by his failure to bring them in a reasonable amount of time.[3]

We cited with approval Rule 9(a) of the federal habeas corpus rules.[4] We explained that Rule 9(a) required that the State show (1) "a particularized showing of prejudice," (2) "that the prejudice was caused by the petitioner having filed a late petition," and (3) "that the petitioner has not acted with reasonable diligence as a matter of law."[5] Although we did not explicitly adopt these requirements, *Carrio* relies almost exclusively on Rule 9(a) and cases interpreting it.[6]

I would agree with the conclusion that the applicant waited too long to bring his claims in this case if the State had satisfied the three requirements of Rule 9(a). To the contrary, in the State's original response to the application, the State requested the trial court to designate the issue of ineffective assistance of counsel as an unresolved issue. After the trial court received the affidavit from appellate counsel, the State made proposed findings of fact, which the trial court signed. Those findings state that the applicant's appellate counsel notified the applicant that his conviction had been affirmed by the Court of Appeals but failed to notify the applicant that he had a right to file a *pro se* petition for discretionary review.

We should assume that the State was aware of *Carrio* and knew that it could raise the doctrine of laches if it was so inclined. In this case it is particularly true because the applicant's conviction was obtained in Harris County, the same county from which Carrio's conviction was obtained. But, the State never argued that the applicant's claim was so stale that the State was unable to respond to the merits of the claim. The State was clearly not prejudiced in its ability to respond.

And, because the State never argued that the doctrine should apply to this case, the trial court made no findings on this issue. In *Carrio*, we said that because the parties had not had the benefit of our opinion, the record was insufficient to rule on the State's claim that Carrio's claims were barred by the doctrine.[7] We remanded the case for findings on that issue. Here we have no findings regarding the possible application of the doctrine, and the parties did have the benefit of our opinion in *Carrio*. We could not, on this record, find that the applicant's claim was barred by the doctrine of laches.

Also, I believe that the fact that the applicant could raise only one claim in his petition for discretionary review is of no moment. Generally we do not look behind the request for an out-of-time appeal or out-of-time petition for discretionary review to determine whether we should grant relief. The parties have not asked us to do so in this case. And, the fact that the applicant may not have his conviction successfully reversed on petition for dis-

---

**2.** *Id.,* at 487.

**3.** *Ibid.*

**4.** 28 U.S.C. 2254.

**5.** *Carrio,* 992 S.W.2d at 488 (citing *Walters v. Scott,* 21 F.3d 683, 686 (5th Cir.1994)).

**6.** *Id.,* at 487–88.

**7.** *Id.,* at 488.

cretionary review has no bearing on whether the doctrine of laches ought to apply in this case.

I do not think that the laches doctrine applies here, primarily because the State has not asked us to apply it and because the trial court made no findings on this issue. With these comments, I join the majority.

COCHRAN, J., filed a dissenting opinion, in which KEASLER, J., joined.

I respectfully dissent to granting applicant habeas corpus relief to file an out-of-time petition for discretionary review. Applicant has alleged that his appellate counsel was constitutionally ineffective because he failed to advise applicant of his right to file a petition for discretionary review when he timely notified applicant that the court of appeals had affirmed his convictions. I would deny relief based on the equitable doctrine of laches-otherwise known as "sleeping on your rights."[1]

## I.

Applicant was indicted for the 1992 aggravated sexual assault and kidnapping of his estranged wife. At his 1994 trial, the State presented evidence that applicant abducted his wife, forced her into a car, struck her, threatened to kill her, and sexually assaulted her in a park. Appli-

cant's defense at trial was that, while he "scuffled" with his wife before leaving her home, he never hit or threatened her after they were in the car, and she consented to the sex. A jury found him guilty of both offenses and sentenced him to fifty years in prison on the aggravated sexual assault charge and five years in prison on the kidnapping charge. Applicant was sentenced on February 24, 1994—over ten years ago.

His attorney raised a single issue on appeal: the trial judge erred in failing to give a jury instruction on the lesser-included offense of misdemeanor assault in the aggravated sexual assault charge. Applicant did not challenge the kidnapping conviction. The Fourteenth Court of Appeals, in an unpublished opinion, held that applicant was not entitled to an instruction on misdemeanor assault because, according to his sworn testimony, he had not committed any offense at all. "Because Steptoe testified that the sex was consensual and that he never used force or placed complainant in fear of her life, there was no evidence to support the submission of misdemeanor assault."[2] The court of appeals' opinion was filed on February 29, 1996 over eight years ago.

On March 13, 1996, applicant's appointed appellate lawyer wrote applicant a letter:

1. In *Ex parte Carrio*, 992 S.W.2d 486 (Tex. Crim.App.1999), this Court quoted the definition of "laches" contained in Black's Law Dictionary:

"The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting dili-

gence, to do what in law, should have been done."
*Id.* at 487 n. 2 (quoting BLACK'S LAW DICTIONARY 875 (6th ed.1990)).

2. *Steptoe v. State*, Nos. 14–94–0200–CR and 14–94–201–CR (Tex. App.-Houston [1st Dist.] February 29, 1996) (not designated for publication). The court of appeals did note: "Although Steptoe testified that prior to leaving the complainant's house, he and the complainant may have 'scuffled,' this evidence related to the kidnapping charge, and the jury was instructed on the lesser included offense of assault for that offense." *Id.* at * 1.

Enclosed please find a copy of the Order from the appellate court. The judgments were affirmed, that is, the convictions will stand unless further litigation/appeals change that. As I am no longer your attorney, I will not attempt to counsel you or give you advice on whether or not you should attempt to take this further. BE ADVISED, HOWEVER, THAT THERE ARE VARIOUS TIMELINES AND DEADLINES WITHIN WHICH YOU MUST ACT, OTHERWISE YOUR CONVICTION WILL NO LONGER BE APPEALABLE.

If you have any questions, or if I can be of further assistance, do not hesitate to write to me at the address appearing on this letterhead.

There is nothing in this record to suggest that applicant ever responded to this letter with any questions, nor does applicant assert that he ever attempted to communicate with his former attorney during the next six years.

Instead, on September 30, 2002, applicant, like Lazarus rising from the dead, filed a writ of habeas corpus in the convicting court. He alleged that his appellate attorney provided ineffective assistance because, when counsel timely notified him of the result of his direct appeal, he did not also explicitly tell applicant that he could file a *pro se* petition for discretionary review.

In October and November, 2003, applicant's former counsel filed two separate affidavits. The first one stated that he had no independent memory of this client or the appeal he had handled some eight years earlier. Furthermore, both his computer and hard copy files from that era were now "non-existent." All he could testify to was his usual business practice

and routine. After applicant sent his former attorney a copy of counsel's 1996 letter, that attorney wrote a supplemental affidavit stating, *inter alia:*

Said letter which notified [applicant] that there were timelines and deadlines applicable to any relief which he felt himself entitled to, but I did not elaborate, in that letter, on what those deadlines were, nor did I specifically state that he had a right to file a Petition for Discretionary Review. I have no recollection of whether or not he and I had any contemporaneous conversation regarding what rights he had in connection with any potential Petition for Discretionary Review, and as stated previously, I possess no files or documents with which to refresh my memory.

I feel compelled to add, however, that at no time was any interest by Johnny Steptoe in pursuing any further relief made known to me until October 14, 2003, when I was notified ... that Mr. Steptoe was seeking habeas corpus review.

Based on counsel's failure to explicitly inform applicant that he could file a *pro se* petition for discretionary review, this Court now finds that his counsel was constitutionally deficient under the Sixth Amendment and that applicant was harmed by this deficient performance. Therefore, the Court grants applicant leave to file an out-of-time petition for discretionary review under *Ex parte Wilson.*[3]

## II.

Although the Great Writ of habeas corpus stands as a constitutional bulwark of individual liberty and provides a "swift and imperative" remedy against illegal re-

---

3. 956 S.W.2d 25 (Tex.Crim.App.1997).

straint,[4] it exacts enormous societal and administrative costs. One of those costs is that by protracting the finality of criminal litigation, habeas review " 'undermine[s] confidence in the integrity of our procedures' and inevitably delay[s] and impair[s] the orderly administration of justice."[5] Another of those costs is the enormous amount of judicial time, effort, and money required to sift through the more than 6,600 applications for writs of habeas corpus that this Court receives each year.[6]

At some point, there must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh an inmate's right to endlessly litigate an appeal of his conviction.[7] Routinely granting ha-

**4.** *See, e.g., Price v. Johnston,* 334 U.S. 266, 283, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) ("[t]he historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court for whatever purpose might be essential to the proper disposition of a cause. The most important result of such usage has been to afford a swift and imperative remedy in all cases of illegal restraint upon personal liberty").

**5.** *Custis v. United States,* 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (quoting *United States v. Addonizio,* 442 U.S. 178, 184 n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). In *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court elaborated on the social costs of habeas corpus as it explained why it would not apply its usual *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) constitutional error analysis on habeas review:

> Overturning final and presumptively correct convictions on collateral review ... undermines the States' interest in finality and infringes upon their sovereignty over criminal matters.... Retrying defendants whose convictions are set aside also imposes significant "social costs," including the expenditure of additional time and resources for all the parties involved, the "erosion of memory" and "dispersion of witnesses" that accompany the passage of time and make obtaining convictions on retrial more difficult, and the frustration of "society's interest in the prompt administration of justice." ... And since there is no statute of limitations governing federal habeas, and the only laches recognized is that which affects the State's ability to defend against the claims raised on habeas, retrials following the grant of habeas relief ordinarily take place much later than do retrials following reversal on direct review.

*Id.* at 637, 113 S.Ct. 1710. *See also Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)("[w]ithout finality, the criminal law is deprived of much of its deterrent effect"); *Schneckloth v. Bustamonte,* 412 U.S. 218, 262, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring) ("[n]o effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen"); *Mackey v. United States,* 401 U.S. 667, 691, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) ("[n]o one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation").

**6.** *See* ANNUAL REPORT OF THE TEXAS JUDICIAL SYSTEM: FISCAL YEAR 2003 100 (2004) (noting that "[t]he number of applications for writs of habeas corpus filed, disposed, and pending has remained relatively stable over the past five fiscal years. In FY 2003, there were 6,660 applications added and 6,611 applications disposed, leaving 948 cases pending at the end of the fiscal year. The five-year (FY 1999 to FY 2003) averages were 6,913 applications filed, 7,004 disposed, and 903 applications pending per year") (also available at http://www w.courts.state.tx.us/publicinfo/AR2003/cca/ cca-activity.pdf).

**7.** *See* Bator, *The State Courts and Federal Constitutional Litigation,* 22 WM. & MARY L.REV. 605, 614 (1981).

beas corpus claims requesting an out-of-time petition for discretionary review, filed long after a direct appeal is affirmed on the merits by a court of appeals, undermines the deterrent and rehabilitative functions of the criminal law.[8]

Habeas corpus is an equitable doctrine of relief. Laches is equally an equitable doctrine which may, at times, preclude habeas relief. The laches doctrine is codified as Rule 9(a) in the federal habeas corpus rules [9] to "preclude a person from profiting to the detriment of another by his own delay in enforcing his rights." [10] Of course, because of the current strict one-year statute of limitations that Congress imposed upon state petitioners filing a writ of habeas corpus in federal courts,[11] Rule 9(a) is not much used in the federal system now.

The Texas Legislature has not enacted a statute-of-limitations for habeas corpus filings in non-capital cases as it has done in death penalty writs filed under article 11.071 of the Code of Criminal Procedure.[12] Nor has it enacted any statutory laches bar to habeas corpus relief. However, this Court has previously used that equitable doctrine, specifically referring to Federal Rule 9(a), as a limitation upon habeas corpus relief in appropriate cases.

In *Ex parte Carrio*,[13] the inmate requested habeas corpus relief fourteen years into his sentence based on a complaint of ineffective assistance of counsel.[14] The State countered that, because of the time delay, its ability to respond had been prejudiced.[15] The trial court agreed with the State and recommended that relief be denied under the doctrine of laches. We stated that "the doctrine of laches is a theory that we may, and should, employ in our determination of whether to grant relief in any given 11.07 case." We then remanded the case back to the trial court because we lacked sufficient information upon which to evaluate either the ineffective assistance of counsel claim or the laches claim.[16] After remand, we denied the inmate's request for habeas corpus relief based on the doctrine of laches.[17] In Tex-

---

8. See *Coleman v. Thompson*, 501 U.S. 722, 748, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991):

"As Justice Harlan once observed, 'both the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community.' "

*Id.* at 748, 111 S.Ct. 2546 (quoting *Sanders v. United States*, 373 U.S. 1, 24–25, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (dissenting opinion) (internal quotations omitted)).

9. Rule 9(a) of the Rules Governing Section 2254 Cases reads:

(a) **Delayed petitions.** A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

10. *Moore v. Smith*, 694 F.2d 115, 117 (6th Cir.1982).

11. 28 U.S.C. § 2244(d)(1) (1996 Anti–Terrorism and Effective Death Penalty Act, ("AEDPA")).

12. *See* Tex.Code Crim. Proc. art. 11.071, § 4(a).

13. 992 S.W.2d 486 (Tex.Crim.App.1999).

14. *Id.* at 487.

15. *Id.*

16. *Id.* at 488.

17. *Ex Parte Carrio*, 9 S.W.3d 163 (Tex.Crim. App.1999).

as habeas corpus law, as in federal law, "[e]quity is not intended for those who sleep on their rights."[18]

In *Carrio*, this Court specifically referred to the Advisory Committee Notes to Federal Rule 9(a) which state that "the grounds of error most susceptible to dismissal under Rule 9(a) are ineffective assistance of counsel, denial of right to appeal, involuntary guilty plea, use of coerced confession, and illegally constituted jury."[19] The Federal Advisory Committee explained that:

> The latter four grounds are often interlocked with the allegation of ineffective counsel. When they are asserted after the passage of many years, both the attorney for the defendant and the state have difficulty in ascertaining what the facts are. It often develops that the defense attorney has little or no recollection as to what took place.... [20]

Another portion of the Advisory Committee Notes, which we did not cite in *Carrio*, states that:

> If the delay is more than five years after the judgment of conviction, prejudice is presumed, although this presumption is rebuttable by the petitioner. Otherwise, the state has the burden of showing such prejudice.[21]

Although this rebuttable presumption was explicitly written into the rule, Congress deleted that portion when it enacted the original Rule 9(a) in 1976.[22] Instead, Congress waited twenty years and then enacted a harsh one-year statute of limitations on habeas petitions.[23]

I do not know whether the federal courts' failure to apply Rule 9(a) with greater appreciation for the jurisprudential concerns over a flood of stale, meritless writs in the federal courts was partially responsible for what many think was the draconian solution of an absolute statute-of-limitations bar.[24] But surely there is a

---

**18.** *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir.1999) (declining to apply equitable tolling to habeas corpus claim filed after AEDPA one-year statute of limitations had expired) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir.1989)).

**19.** *Ex parte Carrio*, 992 S.W.2d at 487.

**20.** U.S.C.S. § 2254 Cases Rule 9(a), advisory committee notes.

**21.** *Id.* Although the State did not raise the issue of laches in this case, a rebuttable presumption casts the burden of showing a lack of prejudice upon the applicant. Thus, when a habeas application is filed within five years after judgment, the State would be required to prove that applicant's delay caused it prejudice. Conversely, when a habeas application is filed more than five years after judgment (as here), the applicant may be required to prove that his delay did not prejudice the State. *See id.* (stating that, if the judgment of conviction is more than five years old, "[t]he prisoner has 'the burden of going forward with evidence to rebut or meet the presumption' that the state has not been prejudiced by the passage of a substantial period of time.

This does not impose too heavy a burden on the petitioner.... Even if the petitioner should fail to overcome the presumption of prejudice to the state, he is not automatically barred from asserting his claim.... [H]e may proceed if he neither knew nor, by the exercise of reasonable diligence, could have known[,] of the grounds for relief").

**22.** 1976, P.L. 94–426, § 2(7), (8), 90 Stat. 1335 (as amended).

**23.** 28 U.S.C. § 2244(d)(1).

**24.** *See* Burke W. Kappler, *Criminal Law: Small Favors: Chapter 254 of the Antiterrorism and Effective Death Penalty Act, the States, and the Right to Counsel*, 90 J.Crim.L. & Criminology, 469, 469 (2000) (noting that procedural bars contained in AEDPA habeas reform legislation are "[c]ondemned by many as draconian limitations on the abilities of prisoners to guarantee the constitutionality of their confinement or death sentence, they are lauded by others as a necessary and overdue step against duplicative and abusive litigation by condemned criminals"); *See, e.g., Gonzalez v. United States*, 135 F.Supp.2d 112, 113–26

cautionary lesson here. As the number of post-conviction writs of habeas corpus increases, a jurisprudential price will be paid.

To avoid the strict statutory bars enacted in the AEDPA, which have the potential to throw out the baby with the bathwater, I would more rigorously apply discretionary equitable doctrines, such as laches, to those stale applications which contain neither a compelling justification for delay nor any discernible claim of a fundamental miscarriage of justice.

### III.

This is one such application that should be barred by laches. Applicant asserts that he "was denied the effective assistance of Counsel where Counsel failed to advise him of his right to file a Pro Se Petition for Discretionary Review." But that asserted failure occurred more than six years before applicant ever mentioned it. Applicant's attorney timely told him of the court of appeals' decision and sent him a copy of the opinion affirming his conviction. That attorney told him that the "convictions will stand unless further litigation/appeals change that." That attorney told applicant that there were timelines and deadlines that he must adhere to if he wished to pursue any further litigation/appeals. Finally, that attorney told applicant that if he had any questions or wanted any further assistance, he should write counsel at his office address. Applicant did not do so.

By the time that applicant filed his writ of habeas corpus, his former attorney no longer had any independent memory of applicant or his case. He no longer had any computer or hard copy file of this case or his representation of applicant. He does not know, nor can the State, trial court, or ourselves know, whether he had explicitly informed applicant at some point in the process of his right to file a *pro se* petition for discretionary review which would have sufficed to fulfill his professional obligation.[25]

Furthermore, we have before us the three-page, unpublished opinion by the court of appeals discussing and disposing of applicant's sole point of error on appeal the failure to include the lesser-included offense of misdemeanor assault on the aggravated sexual assault charge. That is the only point of error that applicant could raise in an out-of-time petition for discretionary review because it was the only point of error raised in the court of appeals. Without expressing any opinion on the merits of that claim, I cannot conclude that it would be a fundamental miscarriage of justice not to review that claim some eight years after it was rejected on direct appeal. The purpose of our discretionary review, after all, is not to decide whether the court of appeals "got it right" in each and every individual case, but rather whether a particular decision by a court of appeals is likely to have an adverse effect upon the jurisprudence of the state.[26]

---

(D. Mass 2001) (noting that habeas petitioners had shown that their prior convictions used to enhance present sentences were constitutionally infirm and that under prior "kinder, gentler habeas statute," they would have been granted relief, but, because of AEDPA's "draconian" time limitations and bar upon subsequent writs, relief could not be granted).

25. *See Ex parte Lozada–Mendoza,* 45 S.W.3d 107, 110 (Tex.Crim.App.2001) ("[w]e hold

that when a defendant is informed of his ability to file a petition for discretionary review in counsel's initial appointment letter, appellate counsel has complied with *Wilson* ").

26. *See* Tex.R.App. P. 66.3. That rule states:

While neither controlling nor fully measuring the Court of Criminal Appeals' discretion, the following will be considered by the

A Texas criminal defendant does not have an independent, free-standing federal or state constitutional right to a direct appeal in state court.[27] The right to appeal is regulated by the Legislature, and Texas provides for a statutory right of direct appeal of criminal convictions to the courts of appeals. For such "initial appeals as of right," the State is obliged to provide and pay for an indigent defendant's counsel to pursue that appeal.[28] However, according to the Fifth Circuit, "[t]he constitutionally secured right of counsel ends when the decision by the appellate court is entered."[29] If so, then our decision in *Ex parte Wilson*,[30] requiring appellate counsel to inform his former client that he has a right to file a *pro se* petition for discretionary review was not constitutionally-required. But this is an issue that is not presented in the present case and need not be resolved today.

It is sufficient, however, to presume prejudice to the State by applicant's unexplained six-year delay between the resolution of his direct appeal and the date he filed a writ of habeas corpus complaining of his counsel's failure to explicitly inform him of his right to file a *pro se* petition for discretionary review. Because applicant failed to assert this claim in a timely manner, and he has failed to either explain that delay or show any fundamental miscarriage of justice if this Court does not en-

Court in deciding whether to grant discretionary review:
(a) whether a court of appeals' decision conflicts with another court of appeals' decision on the same issue;
(b) whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals;
(c) whether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States;
(d) whether a court of appeals has declared a statute, rule, regulation, or ordinance unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance;
(e) whether the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision; and
(f) whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.
It is of at least some moment that *pro se* petitioners for discretionary review rarely address the impact of the court of appeals' deci-

sion upon the jurisprudence of the state in their petitions. Perhaps this partially accounts for the very low rate of granting discretionary review to *pro se* petitioners. I am aware of only one *pro se* inmate petition for discretionary review that this Court has granted in the past two and a half years, although, of course, there may have been more of which I am unaware.

27. *Phynes v. State*, 828 S.W.2d 1, 2 (Tex.Crim. App.1992) (citing *McKane v. Durston*, 153 U.S. 684, 687–88, 14 S.Ct. 913, 38 L.Ed. 867 (1894)).

28. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (equal protection clause requires appointment of counsel for indigent state defendants on their first appeal as of right); *compare Ross v. Moffitt*, 417 U.S. 600, 619, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (holding that states are not required to furnish counsel to assist defendant in seeking discretionary appellate review).

29. *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir.2002). In *Moore*, the Fifth Circuit held that appellate counsel's failure to notify a defendant of the outcome of his direct appeal to a Texas court of appeals could not amount to ineffective assistance of counsel. *Id.*

30. 956 S.W.2d 25 (Tex.Crim.App.1997).

tertain his out-of-time petition for discretionary review, I would deny relief.