IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,938 & 74,939






EX PARTE JOHNNY STEPTOE, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY






 Cochran, J., filed a dissenting opinion, in which Keasler, J., joined.



O P I N I O N
 


 I respectfully dissent to granting applicant habeas corpus relief to file an out-of-time
petition for discretionary review. Applicant has alleged that his appellate counsel was
constitutionally ineffective because he failed to advise applicant of his right to file a petition
for discretionary review when he timely notified applicant that the court of appeals had
affirmed his convictions. I would deny relief based on the equitable doctrine of laches-
otherwise known as "sleeping on your rights." (1)

I.


 Applicant was indicted for the 1992 aggravated sexual assault and kidnapping of his
estranged wife. At his 1994 trial, the State presented evidence that applicant abducted his wife,
forced her into a car, struck her, threatened to kill her, and sexually assaulted her in a park. 
Applicant's defense at trial was that, while he "scuffled" with his wife before leaving her home,
he never hit or threatened her after they were in the car, and she consented to the sex. A jury
found him guilty of both offenses and sentenced him to fifty years in prison on the aggravated
sexual assault charge and five years in prison on the kidnapping charge. Applicant was
sentenced on February 24, 1994-over ten years ago.

 His attorney raised a single issue on appeal: the trial judge erred in failing to give a jury
instruction on the lesser-included offense of misdemeanor assault in the aggravated sexual
assault charge. Applicant did not challenge the kidnapping conviction. The Fourteenth Court
of Appeals, in an unpublished opinion, held that applicant was not entitled to an instruction on
misdemeanor assault because, according to his sworn testimony, he had not committed any
offense at all. "Because Steptoe testified that the sex was consensual and that he never used
force or placed complainant in fear of her life, there was no evidence to support the
submission of misdemeanor assault." (2) The court of appeals' opinion was filed on February 29,
1996-over eight years ago.

 On March 13, 1996, applicant's appointed appellate lawyer wrote applicant a letter:

 Enclosed please find a copy of the Order from the appellate court. The
judgments were affirmed, that is, the convictions will stand unless further
litigation/appeals change that. As I am no longer your attorney, I will not
attempt to counsel you or give you advice on whether or not you should attempt
to take this further. BE ADVISED, HOWEVER, THAT THERE ARE VARIOUS
TIMELINES AND DEADLINES WITHIN WHICH YOU MUST ACT,
OTHERWISE YOUR CONVICTION WILL NO LONGER BE APPEALABLE.


 If you have any questions, or if I can be of further assistance, do not hesitate to
write to me at the address appearing on this letterhead.


There is nothing in this record to suggest that applicant ever responded to this letter with any
questions, nor does applicant assert that he ever attempted to communicate with his former
attorney during the next six years.

 Instead, on September 30, 2002, applicant, like Lazarus rising from the dead, filed a writ
of habeas corpus in the convicting court. He alleged that his appellate attorney provided
ineffective assistance because, when counsel timely notified him of the result of his direct
appeal, he did not also explicitly tell applicant that he could file a pro se petition for
discretionary review.

 In October and November, 2003, applicant's former counsel filed two separate
affidavits. The first one stated that he had no independent memory of this client or the appeal
he had handled some eight years earlier. Furthermore, both his computer and hard copy files
from that era were now "non-existent." All he could testify to was his usual business practice
and routine. After applicant sent his former attorney a copy of counsel's 1996 letter, that
attorney wrote a supplemental affidavit stating, inter alia: 

 Said letter which notified [applicant] that there were timelines and deadlines
applicable to any relief which he felt himself entitled to, but I did not elaborate,
in that letter, on what those deadlines were, nor did I specifically state that he
had a right to file a Petition for Discretionary Review. I have no recollection
of whether or not he and I had any contemporaneous conversation regarding what
rights he had in connection with any potential Petition for Discretionary Review,
and as stated previously, I possess no files or documents with which to refresh
my memory.


 I feel compelled to add, however, that at no time was any interest by Johnny
Steptoe in pursuing any further relief made known to me until October 14, 2003,
when I was notified ... that Mr. Steptoe was seeking habeas corpus review.


Based on counsel's failure to explicitly inform applicant that he could file a pro se petition for
discretionary review, this Court now finds that his counsel was constitutionally deficient under
the Sixth Amendment and that applicant was harmed by this deficient performance. Therefore,
the Court grants applicant leave to file an out-of-time petition for discretionary review under
Ex parte Wilson. (3)

II.


 Although the Great Writ of habeas corpus stands as a constitutional bulwark of
individual liberty and provides a "swift and imperative" remedy against illegal restraint, (4) it
exacts enormous societal and administrative costs. One of those costs is that by protracting
the finality of criminal litigation, habeas review "'undermine[s] confidence in the integrity of
our procedures' and inevitably delay[s] and impair[s] the orderly administration of justice." (5) 
Another of those costs is the enormous amount of judicial time, effort, and money required
to sift through the more than 6,600 applications for writs of habeas corpus that this Court
receives each year. (6) 

 At some point, there must come a time when a criminal conviction is final, when the
deterrent effects of certainty and immediacy of punishment outweigh an inmate's right to
endlessly litigate an appeal of his conviction. (7) Routinely granting habeas corpus claims
requesting an out-of-time petition for discretionary review, filed long after a direct appeal is
affirmed on the merits by a court of appeals, undermines the deterrent and rehabilitative
functions of the criminal law. (8) 

 Habeas corpus is an equitable doctrine of relief. Laches is equally an equitable doctrine
which may, at times, preclude habeas relief. The laches doctrine is codified as Rule 9(a) in the
federal habeas corpus rules (9) to "preclude a person from profiting to the detriment of another
by his own delay in enforcing his rights." (10) Of course, because of the current strict one-year
statute of limitations that Congress imposed upon state petitioners filing a writ of habeas
corpus in federal courts, (11) Rule 9(a) is not much used in the federal system now. 

 The Texas Legislature has not enacted a statute-of-limitations for habeas corpus filings
in non-capital cases as it has done in death penalty writs filed under article 11.071 of the Code
of Criminal Procedure. (12) Nor has it enacted any statutory laches bar to habeas corpus relief. 
However, this Court has previously used that equitable doctrine, specifically referring to
Federal Rule 9(a), as a limitation upon habeas corpus relief in appropriate cases.

 In Ex parte Carrio, (13) the inmate requested habeas corpus relief fourteen years into his
sentence based on a complaint of ineffective assistance of counsel. (14) The State countered that,
because of the time delay, its ability to respond had been prejudiced. (15) The trial court agreed
with the State and recommended that relief be denied under the doctrine of laches. We stated
that "the doctrine of laches is a theory that we may, and should, employ in our determination
of whether to grant relief in any given 11.07 case." We then remanded the case back to the
trial court because we lacked sufficient information upon which to evaluate either the
ineffective assistance of counsel claim or the laches claim. (16) After remand, we denied the
inmate's request for habeas corpus relief based on the doctrine of laches. (17) In Texas habeas
corpus law, as in federal law, "[e]quity is not intended for those who sleep on their rights." (18)

 In Carrio, this Court specifically referred to the Advisory Committee Notes to Federal
Rule 9(a) which state that "the grounds of error most susceptible to dismissal under Rule 9(a)
are ineffective assistance of counsel, denial of right to appeal, involuntary guilty plea, use of
coerced confession, and illegally constituted jury." (19) The Federal Advisory Committee 
explained that:

 The latter four grounds are often interlocked with the allegation of ineffective
counsel. When they are asserted after the passage of many years, both the
attorney for the defendant and the state have difficulty in ascertaining what the
facts are. It often develops that the defense attorney has little or no recollection
as to what took place .... (20)


Another portion of the Advisory Committee Notes, which we did not cite in Carrio, states that:

 If the delay is more than five years after the judgment of conviction, prejudice
is presumed, although this presumption is rebuttable by the petitioner. 
Otherwise, the state has the burden of showing such prejudice. (21)


Although this rebuttable presumption was explicitly written into the rule, Congress deleted that
portion when it enacted the original Rule 9(a) in 1976. (22) Instead, Congress waited twenty years
and then enacted a harsh one-year statute of limitations on habeas petitions. (23)

 I do not know whether the federal courts' failure to apply Rule 9(a) with greater
appreciation for the jurisprudential concerns over a flood of stale, meritless writs in the
federal courts was partially responsible for what many think was the draconian solution of an
absolute statute-of-limitations bar. (24) But surely there is a cautionary lesson here. As the
number of post-conviction writs of habeas corpus increases, a jurisprudential price will be
paid. 

 To avoid the strict statutory bars enacted in the AEDPA, which have the potential to
throw out the baby with the bathwater, I would more rigorously apply discretionary equitable
doctrines, such as laches, to those stale applications which contain neither a compelling
justification for delay nor any discernible claim of a fundamental miscarriage of justice.

III.


 This is one such application that should be barred by laches. Applicant asserts that he
"was denied the effective assistance of Counsel where Counsel failed to advise him of his right
to file a Pro Se Petition for Discretionary Review." But that asserted failure occurred more
than six years before applicant ever mentioned it. Applicant's attorney timely told him of the
court of appeals' decision and sent him a copy of the opinion affirming his conviction. That
attorney told him that the "convictions will stand unless further litigation/appeals change that." 
That attorney told applicant that there were timelines and deadlines that he must adhere to if
he wished to pursue any further litigation/appeals. Finally, that attorney told applicant that if
he had any questions or wanted any further assistance, he should write counsel at his office
address. Applicant did not do so. 

 By the time that applicant filed his writ of habeas corpus, his former attorney no longer
had any independent memory of applicant or his case. He no longer had any computer or hard
copy file of this case or his representation of applicant. He does not know, nor can the State,
trial court, or ourselves know, whether he had explicitly informed applicant at some point in
the process of his right to file a pro se petition for discretionary review which would have
sufficed to fulfill his professional obligation. (25) 

 Furthermore, we have before us the three-page, unpublished opinion by the court of
appeals discussing and disposing of applicant's sole point of error on appeal- the failure to
include the lesser-included offense of misdemeanor assault on the aggravated sexual assault
charge. That is the only point of error that applicant could raise in an out-of-time petition for
discretionary review because it was the only point of error raised in the court of appeals. 
Without expressing any opinion on the merits of that claim, I cannot conclude that it would be
a fundamental miscarriage of justice not to review that claim some eight years after it was
rejected on direct appeal. The purpose of our discretionary review, after all, is not to decide
whether the court of appeals "got it right" in each and every individual case, but rather whether
a particular decision by a court of appeals is likely to have an adverse effect upon the
jurisprudence of the state. (26)

 A Texas criminal defendant does not have an independent, free-standing federal or state
constitutional right to a direct appeal in state court. (27) The right to appeal is regulated by the
Legislature, and Texas provides for a statutory right of direct appeal of criminal convictions
to the courts of appeals. For such "initial appeals as of right," the State is obliged to provide
and pay for an indigent defendant's counsel to pursue that appeal. (28) However, according to the
Fifth Circuit, "[t]he constitutionally secured right of counsel ends when the decision by the
appellate court is entered." (29) If so, then our decision in Ex parte Wilson, (30) requiring appellate
counsel to inform his former client that he has a right to file a pro se petition for discretionary
review was not constitutionally-required. But this is an issue that is not presented in the
present case and need not be resolved today.

 It is sufficient, however, to presume prejudice to the State by applicant's unexplained
six-year delay between the resolution of his direct appeal and the date he filed a writ of habeas
corpus complaining of his counsel's failure to explicitly inform him of his right to file a pro
se petition for discretionary review. Because applicant failed to assert this claim in a timely
manner, and he has failed to either explain that delay or show any fundamental miscarriage of
justice if this Court does not entertain his out-of-time petition for discretionary review, I
would deny relief. 

Cochran, J.

Filed: April 21, 2004.

Publish
1. In Ex parte Carrio, 992 S.W.2d 486 (Tex. Crim. App. 1999), this Court quoted the
definition of "laches" contained in Black's Law Dictionary:

 "The doctrine of laches is based upon the maxim that equity aids the vigilant and not
those who slumber on their rights. It is defined as neglect to assert a right or claim
which, taken together with lapse of time and other circumstances causing prejudice to
an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an
unreasonable and unexplained length of time under circumstances permitting diligence,
to do what in law, should have been done."

Id. at 487 n.2 (quoting Black's Law Dictionary 875 (6th ed. 1990).
2. Steptoe v. State, Nos. 14-94-0200-CR and 14-94-201-CR (Tex. App -Houston [1st Dist.]
February 29, 1996) (not designated for publication) 1996 Tex. App. LEXIS 845. The court of
appeals did note: "Although Steptoe testified that prior to leaving the complainant's house, he and the
complainant may have 'scuffled,' this evidence related to the kidnapping charge, and the jury was
instructed on the lesser included offense of assault for that offense." Id. at 3. 
3. 956 S.W.2d 25 (Tex. Crim. App. 1997).
4. See, e.g., Price v. Johnson, 334 U.S. 266, 283 (1948) ("[t]he historic and great usage of the
writ, regardless of its particular form, is to produce the body of a person before a court for whatever
purpose might be essential to the proper disposition of a cause. The most important result of such usage
has been to afford a swift and imperative remedy in all cases of illegal restraint upon personal liberty").
5. Custis v. United States, 511 U.S. 485, 497 (1994) (quoting United States v. Addonizio,
442 U.S. 178, 184 n.11 (1979)). In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme
Court elaborated on the social costs of habeas corpus as it explained why it would not apply its usual
Chapman constitutional error analysis on habeas review:

 Overturning final and presumptively correct convictions on collateral review ...
undermines the States' interest in finality and infringes upon their sovereignty over
criminal matters. ... Retrying defendants whose convictions are set aside also imposes
significant "social costs," including the expenditure of additional time and resources for
all the parties involved, the "erosion of memory" and "dispersion of witnesses" that
accompany the passage of time and make obtaining convictions on retrial more difficult,
and the frustration of "society's interest in the prompt administration of justice." ... And
since there is no statute of limitations governing federal habeas, and the only laches
recognized is that which affects the State's ability to defend against the claims raised on
habeas, retrials following the grant of habeas relief ordinarily take place much later than
do retrials following reversal on direct review. 

Id. at 637. See also Teague v. Lane, 489 U.S. 288, 309 (1989)("[w]ithout finality, the criminal law is
deprived of much of its deterrent effect"); Schneckloth v. Bustamonte, 412 U.S. 218, 262 (1973)
(Powell, J., concurring) ("[n]o effective judicial system can afford to concede the continuing theoretical
possibility that there is error in every trial and that every incarceration is unfounded. At some point the
law must convey to those in custody that a wrong has been committed, that consequent punishment has
been imposed, that one should no longer look back with the view to resurrecting every imaginable basis
for further litigation but rather should look forward to rehabilitation and to becoming a constructive
citizen"); Mackey v. United States, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in part and
dissenting in part) ("[n]o one, not criminal defendants, not the judicial system, not society as a whole is
benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every
day thereafter his continued incarceration shall be subject to fresh litigation").
6. See Annual Report of the Texas Judicial System: Fiscal Year 2003 100 (2004)
(noting that "[t]he number of applications for writs of habeas corpus filed, disposed, and pending has
remained relatively stable over the past five fiscal years. In FY 2003, there were 6,660 applications
added and 6,611 applications disposed, leaving 948 cases pending at the end of the fiscal year. The
five-year (FY 1999 to FY 2003) averages were 6,913 applications filed, 7,004 disposed, and 903
applications pending per year") (also available at
http://www.courts.state.tx.us/publicinfo/AR2003/cca/cca_activity.pdf). 
7. See Bator, The State Courts and Federal Constitutional Litigation, 22 Wm. & Mary L.
Rev. 605, 614 (1981).
8. See Coleman v. Thompson, 501 U.S. 722, 748 (1991): "As Justice Harlan once observed, 'both the individual criminal defendant and society
have an interest in insuring that there will at some point be the certainty that comes with
an end to litigation, and that attention will ultimately be focused not on whether a
conviction was free from error but rather on whether the prisoner can be restored to a
useful place in the community.'"

Id. at 748 (quoting Sanders v. United States, 373 U.S. 1, 24-25 (1963) (dissenting opinion) (internal
quotations omitted).
9. Rule 9(a) of the Rules Governing Section 2254 Cases reads:

 (a) Delayed petitions. A petition may be dismissed if it appears that the state of
which the respondent is an officer has been prejudiced in its ability to respond to the
petition by delay in its filing unless the petitioner shows that it is based on grounds of
which he could not have had knowledge by the exercise of reasonable diligence before
the circumstances prejudicial to the state occurred.
10. Moore v. Smith, 694 F.2d 115, 117 (6th Cir. 1982).
11. 28 U.S.C. § 2244(d)(1) (1996 Anti-Terrorism and Effective Death Penalty Act,
("AEDPA")).
12. See Tex. Code Crim. Proc. art. 11.071, § 4(a).
13. 992 S.W.2d 486 (Tex. Crim. App. 1999).
14. Id. at 487.
15. Id.
16. Id. at 488.
17. Ex Parte Carrio, 9 S.W.3d 163 (Tex. Crim. App.1999).
18. Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999) (declining to apply equitable tolling to
habeas corpus claim filed after AEDPA one-year statute of limitations had expired) (quoting Covey v.
Arkansas River Co., 865 F.2d 660, 662 (5th Cir.1989)).
19. Ex parte Carrio, 992 S.W.2d at 487.
20. U.S.C.S. § 2254 Cases Rule 9(a), advisory committee notes.
21. Id. Although the State did not raise the issue of laches in this case, a rebuttable presumption
casts the burden of showing a lack of prejudice upon the applicant. Thus, when a habeas application is
filed within five years after judgment, the State would be required to prove that applicant's delay
caused it prejudice. Conversely, when a habeas application is filed more than five years after judgment
(as here), the applicant may be required to prove that his delay did not prejudice the State. See id.
(stating that, if the judgment of conviction is more than five years old, "[t]he prisoner has 'the burden of
going forward with evidence to rebut or meet the presumption' that the state has not been prejudiced
by the passage of a substantial period of time. This does not impose too heavy a burden on the
petitioner. ... Even if the petitioner should fail to overcome the presumption of prejudice to the state, he
is not automatically barred from asserting his claim. ... [H]e may proceed if he neither knew nor, by the
exercise of reasonable diligence, could have known[,] of the grounds for relief").
22. 1976, P.L. 94-426, § 2(7), (8), 90 Stat. 1335 (as amended).
23. 28 U.S.C. § 2244(d)(1).
24. See Burke W. Kappler, Criminal Law: Small Favors: Chapter 254 of the Antiterrorism
and Effective Death Penalty Act, the States, and the Right to Counsel, 90 J. Crim.L. &
Criminology, 469, 469 (2000) (noting that procedural bars contained in AEDPA habeas reform
legislation are "[c]ondemned by many as draconian limitations on the abilities of prisoners to guarantee
the constitutionality of their confinement or death sentence, they are lauded by others as a necessary
and overdue step against duplicative and abusive litigation by condemned criminals"); See, e.g.,
Gonzalez v. United States, 135 F. Supp.2d 112, 113-26 (S. Mass 2001) (noting that habeas
petitioners had shown that their prior convictions used to enhance present sentences were
constitutionally infirm and that under prior "kinder, gentler habeas statute," they would have been
granted relief, but, because of AEDPA's "draconian" time limitations and bar upon subsequent writs,
relief could not be granted).
25. See Ex parte Lozada-Mendoza, 45 S.W.3d 107, 110 (Tex. Crim. App. 2001) ("[w]e hold
that when a defendant is informed of his ability to file a petition for discretionary review in counsel's
initial appointment letter, appellate counsel has complied with Wilson").
26. See Tex. R. App. P. 66.3. That rule states:

 While neither controlling nor fully measuring the Court of Criminal Appeals' discretion,
the following will be considered by the Court in deciding whether to grant discretionary
review:

 (a) whether a court of appeals' decision conflicts with another court of appeals' decision
on the same issue;

 (b) whether a court of appeals has decided an important question of state or federal law
that has not been, but should be, settled by the Court of Criminal Appeals;

 (c) whether a court of appeals has decided an important question of state or federal law
in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or
the Supreme Court of the United States;

 (d) whether a court of appeals has declared a statute, rule, regulation, or ordinance
unconstitutional, or appears to have misconstrued a statute, rule, regulation, or
ordinance;

 (e) whether the justices of a court of appeals have disagreed on a material question of
law necessary to the court's decision; and

 (f) whether a court of appeals has so far departed from the accepted and usual course
of judicial proceedings, or so far sanctioned such a departure by a lower court, as to
call for an exercise of the Court of Criminal Appeals' power of supervision.

It is of at least some moment that pro se petitioners for discretionary review rarely address the impact
of the court of appeals' decision upon the jurisprudence of the state in their petitions. Perhaps this
partially accounts for the very low rate of granting discretionary review to pro se petitioners. I am
aware of only one pro se inmate petition for discretionary review that this Court has granted in the past
two and a half years, although, of course, there may have been more of which I am unaware.
27. Phynes v. State, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992) (citing McKane v. Durston, 153
U.S. 684, 687-88 (1894)).
28. Douglas v. California, 372 U.S. 353 (1963) (equal protection clause requires appointment
of counsel for indigent state defendants on their first appeal as of right); compare Ross v. Moffitt, 417
U.S. 600, 619 (1974) (holding that states are not required to furnish counsel to assist defendant in
seeking discretionary appellate review).
29. Moore v. Cockrell, 313 F.3d 880, 882 (5th Cir. 2002). In Moore, the Fifth Circuit held
that appellate counsel's failure to notify a defendant of the outcome of his direct appeal to a Texas court
of appeals could not amount to ineffective assistance of counsel. Id. 
30. 956 S.W.2d 25 (Tex. Crim. App. 1997).