**Ex parte Norman Edward CARRIO, Applicant.**

**Nos. 73180, 73181.**

Court of Criminal Appeals of Texas.

May 26, 1999.

Norman Edward Carrio, pro se.

---

Lynn Hardaway, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## *O P I N I O N*

PRICE, J. delivered the opinion of the court in which McCORMICK, P.J., MANSFIELD, KELLER, HOLLAND, JOHNSON, and KEASLER, J.J. joined.

This is a post-conviction application for writ of habeas corpus filed pursuant to Article 11.07, V.A.C.C.P. Applicant was convicted of murder and attempted murder. Punishment was assessed at sixty years and twenty years, respectively, in the Texas Department of Criminal Justice, Institutional Division. Applicant's convictions were affirmed on direct appeal. *Carrio v. State*, Nos. 14–83–334–CR and 14–83–335–CR (Tex.App.—Houston [1 st Dist.], delivered July 12, 1984, pets. ref'd).

Applicant contends, *inter alia*, that his convictions should be set aside as he received ineffective assistance of counsel.[1] Specifically, he has raised numerous contentions regarding counsel's alleged failure to investigate, interview witnesses, and prepare for trial.

The trial court has entered findings of fact and conclusions of law, based upon the State's response, stating that due to Applicant's fourteen year delay in waiting to attack the instant convictions, the State's ability to respond has been prejudiced. The trial court recommends relief be denied under the doctrine of laches.[2] This Court has never denied relief on a valid claim due to an applicant's delay in bringing the claim. On the contrary, we have held that "we have no desire to impose upon defendants the requirement that claims for relief be asserted within a specified period of time." *Ex parte Galvan*, 770 S.W.2d 822, 824 (Tex.Crim.App.1989) (citing *Ex parte Rocha*, 482 S.W.2d 169 (Tex. Crim.App.1972), and *Ex parte Young*, 479 S.W.2d 45 (Tex.Crim.App.1972)). Nevertheless, we have recognized that delay on the applicant's part will affect his credibility. *Young*, 479 S.W.2d at 46.

The federal courts, however, have long recognized the common-law doctrine of laches in evaluating post-conviction writs of habeas corpus, and in fact codified that doctrine in Rule 9(a) of the Rules Governing § 2254 Cases. Rule 9(a) provides as follows:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

In the Advisory Committee Note following this Rule, the commentators state that the grounds of error most susceptible to dismissal under Rule 9(a) are ineffective assistance of counsel, denial of right to appeal, involuntary guilty plea, use of coerced confession, and illegally constituted jury. The commentators reason that, when these claims are asserted after the passage of many years, attorneys for the defendant and the state have difficulty in ascertaining the facts. The commentators further reason that often the defense attorney has little or no recollection as to what took place and many of

---

**1.** Applicant alleges approximately forty-three identical grounds for relief in these applications. However, aside from the claims regarding ineffective assistance of counsel, Applicant's contentions are without merit.

**2.** "The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done." BLACK'S LAW DICTIONARY 875 (6 th ed.1990).

the participants in the trial are dead or their whereabouts unknown. Further, the court reporter's notes may have been lost or destroyed, thus eliminating any exact record of what transpired.

Finally, the commentators note that Rule 9(a) is not a statute of limitations but instead is based on the equitable doctrine of laches. Further, the language of the Rule is permissive rather than mandatory; "[T]his clearly allows the court which is considering the petition to use discretion in assessing the equities of the particular situation."

The Fifth Circuit has acknowledged that the application of Rule 9(a) "must be carefully limited to avoid abrogating the purpose of the writ of habeas corpus." *Walters v. Scott*, 21 F.3d 683, 686 (5th Cir. 1994). It is the burden of the State "to (1) make a *particularized* showing of prejudice, (2) show that the prejudice was *caused* by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law." *Id.* at 686–87 (emphasis in original). The court explained that the type of prejudice the State must show is prejudice in its ability to respond to the allegations in the petition. *Id.* at 687.

If the State makes its showing of these elements, it is then the burden of the petitioner, in federal court, to show either that the state actually has not been prejudiced or that the petitioner's delay is justified under the rule. *Walters*, 21 F.3d at 687. Significantly, "delay alone is no bar to federal habeas relief ... In order to prevail on a laches claim respondent must make *a particularized showing of prejudice.*" *Strahan v. Blackburn*, 750 F.2d 438, 441 (5th Cir.1985) (citing *McDonnell v. Estelle*, 666 F.2d 246, 251 (5th Cir.1982)).

We agree with the State that the doctrine of laches is a theory which we may, and should, employ in our determination of whether to grant relief in any given 11.07 case. The fact that Texas has no statute or rule comparable with Rule 9(a) is notable but not ultimately prohibitive, since laches is an equitable common-law doctrine. We now address the State's laches argument. Applicant was convicted in 1983, and he filed this writ application in the trial court on November 4, 1997. Thus, the trial court's findings are correct that Applicant has delayed some fourteen years in presenting his claims.

The State makes a general argument that Applicant's delay alone in raising his grounds for relief has prejudiced its ability to respond to the current claims. However, as in the fifth circuit, the length of delay alone will not constitute either unreasonableness of delay or prejudice.[3] Id. at 443.

Neither the State, nor the Applicant, had the benefit of the instant opinion. Therefore, we do not believe the issue of laches has been properly presented by the parties and this Court still lacks sufficient information upon which to evaluate Applicant's claims of ineffective assistance of counsel or the State's claim of laches.

Since Applicant has stated facts requiring resolution and since this Court cannot hear evidence, it is necessary for the matter to be returned to the trial court for resolution of those issues. The trial court may resolve those issues as set out in Article 11.07 § 3(d), V.A.C.C.P., in that it may order affidavits from counsel, depositions, interrogatories, or a hearing. In the appropriate case the trial court may rely

---

3. The doctrine of laches concerns prejudice, not mere passage of time. In this opinion, we do not impose any time limits on habeas claims. For that reason, the dissent's discussion of time limits under 11.071 is misplaced, as is the discussion of *Galvan*. Contrary to the dissent's implication, we did not even consider the concept of laches in *Galvan*, let alone reject it. And the majority did not consider it, pro or con, in *Ex parte Patterson*, 969 S.W.2d 16 (Tex.Crim.App. 1998). Laches was not raised in that case. Here, on the other hand, the trial court found that the State was prejudiced by applicant's fourteen year delay and concluded that laches barred relief, so we address the issue.

on personal recollection. If the trial court elects to hold a hearing, either by a magistrate as set out in Article 11.07, § 3(d), or in person, it shall first decide whether Applicant is indigent. If the trial court finds that Applicant is indigent, and the Applicant desires to be represented by counsel, the trial court will then, pursuant to the provisions of Article 26.04, V.A.C.C.P., appoint an attorney to represent him at the hearing. The trial court should then make findings of fact as to the issue of ineffective assistance of counsel, should it find that the doctrine of laches, as set out in this opinion, does not apply. The trial court should also make any further findings of fact and conclusions of law which it deems relevant and appropriate to the disposition of Applicant's application for habeas corpus relief.

Since this Court does not hear evidence, *Ex parte Rodriguez,* 169 Tex.Crim. 367, 334 S.W.2d 294 (App.1960), this application for a post-conviction writ of habeas corpus will be held in abeyance pending the trial court's compliance with this opinion. The trial court shall resolve the issues presented within ninety days of the date of this opinion.[4] A supplemental transcript containing any affidavits, the transcription of the court reporter's notes from any interrogatories or hearings held along with the trial court's findings of fact and conclusions of law shall be returned to this Court within one hundred twenty days of the date of this opinion.[5]

MEYERS, J., delivered a dissenting opinion in which WOMACK, J., joined.

MEYERS, J., delivered this dissenting opinion in which WOMACK, J., joined.

In granting this Court the power to issue writs of habeas corpus, the Texas Constitution specifically makes such power subject to regulation under the law:

> *Subject to such regulations as may be prescribed by law,* the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus....

TEX. CONST. art. V, § 5 (emphasis added). In a separate provision, the Legislature was granted the power to enact laws affecting the speed and effectiveness of the writ of habeas corpus:

> The writ of habeas corpus is a writ of right, and shall never be suspended. *The Legislature shall enact laws to render the remedy speedy and effectual.*

TEX. CONST. art. I, § 12 (emphasis added). This constitutional provision led this Court, ten years ago, to decline to impose any kind of time requirement for asserting habeas corpus claims:

> Almost six years have passed since the applicant was convicted in this case and he has never complained previously that he was denied an appeal. This Court has consistently and properly held that we have no desire to impose upon defendants the requirement that claims for relief be asserted within a specified period of time. [citations omitted] Such a rule would be arbitrary and probably unconstitutional. Art. I, § 12, *Tex. Const.*

*Ex parte Galvan,* 770 S.W.2d 822, 824 (Tex.Crim.App.1989).

While imposition of a rule like that fashioned by the majority today was viewed then as "arbitrary and probably unconstitutional," the majority now considers such rule to be "a theory which we may, and should, employ in ... any given 11.07 case." *Majority op.* at 488. No serious attempt is made to explain why we now view laches as no longer arbitrary or unconstitutional, beyond the suggestion that because the feds have laches, we "may and should" apply it as well. Never mind that

---

4. In the event any continuances are granted, copies of the order granting the continuance should be provided to this Court.

5. Any extensions of this time period should be obtained from this Court.

the feds impose laches pursuant to a federal statute.[1]

We have a state statute addressing the timeliness of filing petitions for post-conviction writs of habeas corpus *in death penalty cases* —article 11.071. Tex.Code Crim. Proc. art. 11.071; n.4, supra. Article 11.071 was added to the Code in 1995. Prior to 1995, article 11.07, which set forth procedures for filing post-conviction writs of habeas corpus "in any felony case" (thus making no distinction between death penalty cases and other felonies), contained no time limits for filing. Article 11.071, pertaining only to post-conviction writs of habeas corpus in death penalty cases, was added to the Code at the same time changes were made to article 11.07, making it applicable only to post-conviction writs of habeas corpus in non-death penalty felony cases. While the Legislature specifically provided time requisites for filing petitions in death penalty cases under article 11.071, it chose not to impose timeliness requirements for filing petitions in other felony cases under article 11.07. If the Legislature had wanted time requisites to apply in non-death penalty cases, it certainly would have included such requirements in its 1995 overhaul of article 11.07.

Articles 11.071 and 11.07 reflect a continued[2] and constitutionally grounded legislative assumption of responsibility for deciding how original habeas corpus petitions are filed.[3] *See Davis,* 947 S.W.2d at 222–23. We have made it clear that the Legislature is responsible for deciding the procedural mechanics of asserting a habeas corpus claim; this Court is responsible for addressing the substantive issues raised in a properly filed petition:

> Article 5, Section 5, of the Texas Constitution, expressly empowers the Legislature to regulate the exercise of this Court's original habeas corpus jurisdiction.... And, the Legislature clearly has intended for Article 11.071 to provide the *exclusive means* by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases.

*Id.* at 223 (emphasis added). So, while the Legislature "does not tell this Court how to decide the substantive claims an applicant raises," and thus does not interfere with "core judicial functions," the Legislature has "complete authority to pass any law regulating the means, manner and mode of the assertion" of a habeas claim. *Id.* While we were addressing, in *Davis,* article 11.071, nothing in article 11.07 suggests that it differs from 11.071 in this respect. It would be odd, indeed, if article 11.071 "now contains the *exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases," *id.* at 224 (emphasis in original), but article 11.07 did not likewise provide the exclusive procedures for the

---

1. The majority's assertion that "laches concerns prejudice, not time" is nonsensical. *Majority opinion* at 488, n. 3. Laches defines prejudice in terms of time. As explained by one legal treatise, "laches embraces not only the element of time, but the added ingredient of prejudicial harm." 34 Tex. Jur.3d *Equity* § 46 at 363–64 (1984). This much is evident from the majority's statement in the same paragraph, that "the State was prejudiced by applicant's fourteen year delay...." *Majority* opinion at 488, n. 3.

2. The Legislature has increasingly exercised regulation of procedural rules governing the filing of a writs of habeas corpus:

   > [T]he Legislature since about 1967 has "reworked and expanded procedural requisites" ... So, it has not been uncommon for the Legislature to "enact laws to render the remedy speedy and effectual."

   *Ex parte Davis,* 947 S.W.2d 216, 225 (Tex.Crim.App.1996)(McCormick, P.J., concurring); *see also Ex parte Smith,* 977 S.W.2d 610, 611 n. 4 (Tex.Crim.App.1998)(recognizing "[a]lthough Presiding Judge McCormick's opinion [in *Davis* ] is labeled a concurring opinion, it was joined by a majority of the Court and may be regarded as an opinion for the Court").

3. Article 11.071 was the provision at issue in *Davis,* a death penalty case, but we recognized that the successive writ provisions contained in both articles are "virtually the same." *Davis,* 947 S.W.2d at 227.

exercise of this Court's original habeas corpus jurisdiction in non-death penalty felony cases.

Since *Davis,* the Court has maintained its position that the Legislature has provided the exclusive means for filing original habeas corpus claims. In *Smith,* supra, we declined to permit a late-filed petition in a death penalty case,[4] emphasizing that article 11.071 contains the exclusive procedures for the exercise of the Court's habeas corpus jurisdiction in death penalty cases. 977 S.W.2d at 611. Responding to a dissenter's contention that dismissal of the late application was not "fair," we said:

> Our oaths are to uphold the constitutions and laws of this country and state; *they are not a commission to do what a majority of us think is fair.*

*Id.* (emphasis added). The same logic, in reverse, would apply to article 11.07. Assuming that article 11.07 contains the exclusive procedures for the exercise of this Court's habeas corpus jurisdiction in non-death penalty cases, and article 11.07 contains no requirements concerning the time of filing, this Court has no business writing into that provision a time requirement.

In holding laches applicable to 11.07 petitions for post-conviction writs of habeas corpus, the Court is plainly legislating. What "a majority of us think is fair" concerning a delayed filing of a petition for a writ of habeas corpus is irrelevant. We are not elected to legislate.[5] *See* TEX.

CONST. art. II § 1 (separation of powers provision); *State v. Ross,* 953 S.W.2d 748, (Tex.Crim.App.1997)("[c]ourts have no power to legislate ... courts have no power to create an exception to a statute, nor do they do they have power to add to or take from legislative pains, penalties and remedies ... It is for the Legislature, not the courts, to remedy defects or supply deficiencies in the laws").

With these comments, I dissent.

---

4. Article 11.071 requires the application to be filed within 180 days after counsel is appointed or no later than 45 days after the defendant's brief is filed on direct appeal. TEX. CODE CRIM. PROC. art. 11.071 § 4(a). The convicting court may find good cause to file the petition as late as 90 days thereafter, but "an applicant cannot establish good cause for untimely filing of an application filed after the 91st day after the applicable filing date." *Id.* at § 4(f).

5. There are other problems with adopting laches, particularly in light of article 11.07's Section 4. Section 4 bars a defendant from filing a "subsequent application for writ of habeas corpus" after there is a "final disposi-

tion of an initial application" unless the petitioner pleads facts establishing one of two narrowly drafted exceptions. We have interpreted the "subsequent writ" provision as an effort to limit habeas petitioners to "one bite at the apple." Given that applicants are limited to "one bite" they are motivated to delay filing claims so that everything they can possibly raise is carefully considered and included the first time. Combine this provision with application of laches, which discourages delay, and petitioners are placed in the awkward position of determining when they have waited long enough to ensure that all claims are included, but not so long as to invoke the application of laches.