IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-62,896-02






EX PARTE CARROLL GLENN SCOTT, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


CAUSE NO. FR40752 FROM THE 27
TH


DISTRICT COURT OF BELL COUNTY






 Cochran, J., filed a concurring opinion in which Keasler and Hervey, JJ.,
joined.





 I join in the Court's order denying applicant habeas corpus relief because he failed to
prove that his appellate attorney did not advise him of his right to file a petition for
discretionary review. As a separate matter, however, I think applicant is also barred by the
doctrine of laches from raising this issue twelve years after his conviction was affirmed by
the court of appeals.






I.

 Applicant retained an attorney and his law firm to represent him at trial and, later, on
appeal. A jury found applicant guilty of attempted capital murder and burglary of a
habitation on November 8, 1991. The court of appeals affirmed his convictions on August
25, 1993. (1) In his application for a writ of habeas corpus filed in 2005, applicant made
numerous allegations of ineffective assistance against his attorney, (2) including: 1) failure to
investigate the case; 2) failure to investigate the applicable law; 3) failure to cite and argue
the applicable law on a defendant's right to elect at trial; 4) failure to cite and argue the
applicable law on a defendant's right to a jury instruction on lesser-included offenses at trial;
5) failure to move for a directed verdict; 6) failure to object to an incomplete jury verdict; 6)
allowing applicant to suffer a double jeopardy violation; and 7) "abandon[ing] the appeal
during the appellate process by failing to file the petition for discretionary review and failing
to advise defendant of his appellate and postconviction remedy rights."

 The written trial and appellate record refuted all of applicant's factual allegations
except for the claim that his counsel abandoned him by failing to file a petition for
discretionary review. The habeas court requested applicant's former attorney to respond to
this last assertion. Counsel did so. He filed a three page affidavit setting out his
recollections of this client, his trial, and his appeal after consulting with two other attorneys
in his law firm. The attorney admitted that neither he nor his law firm still had the written
file pertaining to applicant's case. This is not surprising. The trial was in 1991; the court of
appeals rendered its decision in mid-1993; and applicant's counsel was not asked to submit
an affidavit until June 10, 2005. That is almost twelve full years after applicant's conviction
was affirmed on appeal.

 The statute of limitations for filing a legal malpractice claim is two years; (3) the statute
of limitations for filing grievance claims against an attorney is four years. (4)
 A reasonable
attorney should be able to rely upon the statute of limitations for malpractice or grievance
actions as a general guide for maintaining client files, at least in the absence of any comments
or complaints by the former client. I cannot fault applicant's former attorney for failing to
keep his written file on applicant's case for these past twelve years because applicant
apparently never suggested that his former attorney's representation was deficient until 2005.

 Nonetheless, applicant's attorney, aided by the official record, did a thorough job of
reconstructing his recollection of this client and his representation. His response to
applicant's numerous complaints of ineffective assistance was clear, coherent, and logical. 
Regarding the complaint that he "abandoned" applicant on appeal, his former attorney stated:

 We raised all the issues that we raised at trial, and then some, e.g., the
improper admission of evidence, the lack of evidence, double jeopardy
violations, objections to the jury charge, refusing requested defense
instructions to the charge, etc. Unfortunately, his convictions were still
affirmed by the Third Court of Appeals. See Scott v. State, 861 S.W.2d 44
(Tex. App. - Austin, 1993, no pet.). Second, I have no independent
recollection of the circumstances involving the filing of a Petition for
Discretionary Review on Mr. Scott's behalf. If the opinion on direct appeal
affirmed the defendant's conviction, my firm's usual practice was to advise the
client that he or she had the right to file a PDR with the Court of Criminal
Appeals within a certain time. I had spoken with . . . the attorneys who
worked with me on this case, and neither has documentation of that being done
in this case. Therefore, all I can say is that it was our usual practice to advise
the client of the appellate decision, and of his right to file a PDR and we have
no reason to believe that was not done in this case.


 And what evidence is there that counsel's usual practice was not followed in this case? 
Only applicant's bare assertion. Applicant made numerous assertions about his attorney's
representation, but all of them were refuted by the record except for this single one. On
applicant's assertion alone, the trial court recommended that applicant be given an out-of-time PDR. 

 The chain of logic is as follows:

 1. Applicant did not file a PDR;



 Twelve years later, applicant claims that he wanted to file a PDR;

 There is no "certainty" that his attorney's actions or inactions denied applicant
his right to file a PDR;


 


 But applicant "was denied" (5) a right to file a PDR;


 


 Because there is no evidence that applicant "caused" the failure to file a PDR,
he is entitled to file an out-of-time PDR.



 But, as the Court observes, it is the applicant who must prove, by a preponderance of
the evidence, that his attorney was constitutionally deficient before he might be entitled to
relief on a writ of habeas corpus. (6) I think that applicant's unsupported claim-made twelve
years after the fact-is insufficient to prove his attorney actually failed to give him notice of
his right to file a PDR, especially because applicant's numerous other assertions against his
attorney were refuted by the written record. Those previous inaccurate assertions would
logically count against applicant's credibility on this final claim.

 II.


 Turning to the issue of tardiness, I also conclude that applicant is barred by the
doctrine of laches from obtaining relief on this claim. He has provided no explanation why
he waited twelve years after his conviction was affirmed to bring this claim. He has failed
to show any compelling circumstances which would call for equitable relief. There is no
suggestion that applicant's conviction was wrongly affirmed by the court of appeals, or that
giving applicant the opportunity to file a petition for discretionary review is likely to lead to
anything other than a pro forma exercise in futility. Had applicant made a persuasive
showing that the court of appeals had wrongly affirmed his conviction, his claim to equity
might be stronger, but he has not done so. (7) 

 As we noted in Ex parte Carrio, (8)

 "The doctrine of laches is based upon the maxim that equity aids the vigilant
and not those who slumber on their rights. It is defined as neglect to assert
right or claim which, taken together with lapse of time and other circumstances
causing prejudice to an adverse party, operates as a bar in a court of equity. 
Also, it is the neglect for an unreasonable and unexplained length of time
under circumstances permitting diligence, to do what in law, should have been
done." (9)


We further stated that "[t]his Court has never denied relief on a valid claim due to an
applicant's delay in bringing the claim" because Texas, unlike the federal system, does not
have a statute of limitations which requires a petition for habeas corpus to be filed within a
certain period of time. (10) However, we also noted that an applicant's delay in bringing his
claim may affect his credibility. (11)

 Normally, laches is a doctrine that must be pled and proven by the opposing party, (12)
but, like statutes of limitation, the doctrine of laches also protects courts from expending
scarce judicial resources on stale claims and contentions. (13) Not only should an opposing
litigant frown upon dilatoriness and delay, but courts themselves should scowl upon such
conduct. 

 Furthermore, applicant's dilatoriness has succeeded in unfairly sullying the reputation
of his former attorney. That attorney failed to keep applicant's file for triple the attorney-grievance limitations period; but, had he been put on notice of applicant's dissatisfaction at
an earlier time, he might well have the documentary evidence to rebut applicant's claim
against him. Although the State, the nominal opposing party, did not raise the equitable
defense of laches, what about the prejudice to applicant's attorney, the real opposing party
in this scenario? He has suffered a grave injustice. By allowing applicant to assert his claim
of deficient representation so long after the relevant events virtually ensures that any
evidence which was originally available to rebut applicant's assertions no longer exists. We
should not condone a practice which permits inmates to wait for many years after their
convictions are final (and their attorneys' files likely lost or discarded) to assert claims of
ineffective assistance of counsel. 

 I would hold that there is a presumption against the credibility of an applicant who
asserts ineffective assistance of counsel when that claim is first raised in a petition for habeas
corpus outside the four-year attorney-grievance statute of limitations. This presumption may
be rebutted, but unless an applicant provides evidence of why he could not file a timely claim
or how he was unable to discover his attorney's constitutionally deficient conduct, his bare
assertions should not be deemed sufficient to support a claim for relief. Courts should be
willing to apply the doctrine of laches on behalf of the real party-in-interest whose
competence and reputation has been attacked and who has explained why he is unable to
produce evidence to support his own defense.

 I would deny applicant relief for these reasons, as well as those stated in the Court's
order.
Filed: April 12, 2006

Publish
1. Scott v. State, 861 S.W.2d 440 (Tex. App.-Austin 1993, no pet.).
2. Applicant raised four distinct claims in this application; the fourth claim was ineffective
assistance of counsel at trial and on appeal. The trial judge found that the other three claims were
without merit, and he recommended that they be denied. All three of those claims, along with
ten others, had already been rejected by the court of appeals on direct appeal twelve years earlier. 
861 S.W.2d at 442-49. 
3. Tex. Civ. Prac. & Rem. Code § 16.003(a) (two year statute of limitations for tort
claims); see First Nat'l Bank v. Levine, 721 S.W.2d 287, 288-89 (Tex. 1986) (statute of
limitations for attorney malpractice claims is two years); Parsons v. Turley, 109 S.W.3d 804, 807
(Tex. App.-Dallas 2003, pet. denied).
4. See Delhomme v. Comm'n for Lawyer Discipline, 113 S.W.3d 616, 619-20 (Tex.
App.-Dallas 2003, no pet.) (citing former Tex. R. Disciplinary P. 15.08 [now 15.06]; "No
attorney licensed to practice law in Texas may be disciplined for Professional Misconduct
occurring more than four years before the time when the allegation of Professional Misconduct is
brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which
disbarment or suspension is compulsory.").

5. This sounds suspiciously like "the lamp fell off the table," as if these things just happen,
untouched by human hands. 
6. Ante at *3. 
7. Of course, if an inmate files an application for writ of habeas corpus within a reasonable
time after discovering that his conviction had been affirmed on appeal, he need only prove that
his attorney failed to inform him of his right to file a pro se PDR and that he would have done so
in a timely manner had he been told of this right. See Ex parte Crow, 180 S.W.3d 135, 138 (Tex.
Crim. App. 2005) (noting that applicant had carried his burden to prove he would have filed a
timely pro se PDR because "he filed his application [for habeas corpus relief] less than a year
after the court of appeals's opinion became final, he has alleged that he was deprived of the right
to file a PDR and that he believes a PDR would have had a significant chance of success . . . . 
And there is no controverting evidence suggesting that he would not have filed a PDR"). 
Conversely, it is at least a reasonable inference that the fact that applicant failed to take any steps
to assert his right to file a pro se PDR for twelve years is some indication that he was not highly
motivated to exercise this right and would not have exercised it in a timely manner.
8. 992 S.W.2d 486 (Tex. Crim. App. 1999).
9. Id. at 487 n.2 (quoting Black's Law Dictionary 875 (6th ed. 1990)).
10. Id. at 487.
11. Id. 
12. Id.
13. See Ex parte Steptoe, 132 S.W.3d 434, 438-39 (Tex. Crim. App. 2004) (Cochran, J.,
dissenting) (noting the enormous cost in judicial time, effort, and money exacted by habeas
review and stating that "by protracting the finality of criminal litigation, habeas review
'undermines confidence in the integrity of our procedures' and inevitably delays and impairs the
orderly administration of justice"; concluding that "[r]outinely granting habeas corpus claims
requesting an out-of-time petition for discretionary review, filed long after a direct appeal is
affirmed on the merits by a court of appeals, undermines the deterrent and rehabilitative
functions of the criminal law").