

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-079-CV

EX PARTE RIGOBERTO RODRIGUEZ

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In two issues, Appellant Rigoberto Rodriguez complains that the trial court erred by denying his application for writ habeas corpus relief.  We will affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At age fourteen, Rodriguez was involved in a gang-related shooting.  On April 13, 1994, a jury adjudicated Rodriguez, then at age fifteen, delinquent of the offense of murder.  Rodriguez did not appeal this determination.

---

[1] *See* TEX. R. APP. P. 47.4.

After a hearing on February 10, 1997, Rodriguez was transferred from the Texas Youth Commission to the Institutional Division of the Texas Department of Criminal Justice. On May 19, 2005, eleven years after he was adjudicated delinquent, Rodriguez filed an application for writ of habeas corpus, seeking an out-of-time appeal. He alleged in the application that he was denied his right to appeal, effective assistance of counsel on appeal, and that the trial court failed to instruct the jury on the issue of sudden passion. The crux of Rodriguez's complaint at the habeas corpus hearing and now on appeal is that the trial court judge erred by failing to admonish Rodriguez and his guardian, according to section 56.01 of the Texas Family Code, that he had a right to a court-appointed attorney on appeal, thus depriving him of his right to appeal. Section 56.01 of the Texas Family Code states in part that upon entering an appealable order with regard to delinquent conduct of a juvenile, the trial court shall advise the child and the child's parent, guardian, or guardian ad litem of the child's right to appeal, representation by counsel on appeal, and the appointment of an attorney for the appeal if an attorney cannot be obtained because of indigency. TEX. FAM. CODE ANN. § 54.03 (Vernon Supp. 2007), § 56.01(c)–(e) (Vernon 2002).

The State argued in response that there were no legal grounds to support the application and that Rodriguez was barred by the doctrine of laches from

2

obtaining habeas corpus relief. At the conclusion of the hearing on the application for writ of habeas corpus on September 8, 2005, the State argued that Rodriguez had not shown by a preponderance of the evidence that the judge had failed to admonish him and his family, and it again urged that Rodriguez was barred from obtaining habeas corpus relief on the basis of laches. The State then provided the trial court with a copy of *Ex parte Carrio* to supplement its laches argument. 992 S.W.2d 486 (Tex. Crim. App. 1999). The trial court offered Rodriguez an opportunity to respond by letter to the State's laches argument, but there is nothing in the record that shows whether Rodriguez ever responded. On January 19, 2007, the trial court signed an order denying habeas corpus relief.[2] The trial court did not specify a reason for its denial or enter findings of fact and conclusions of law.

## II. SECTION 56.01 ADMONISHMENTS – RIGHT TO APPEAL

In issues one and two, Rodriguez argues that the trial court erred by denying his application for habeas corpus relief because the judge at his adjudication trial did not afford him the protections provided in section 56.01

---

[2] The juvenile docket states that the trial court denied the application on September 12, 2005, but the trial court officially signed the order denying relief on January 19, 2007.

of the Texas Family Code.[3] *See C---- W---- v. State*, 738 S.W.2d 72, 73 (Tex. App.—Dallas 1987, no writ) ("It is obvious that the legislative intent in section 56.01 is to protect the rights of the child. In this instance, the right to appeal is a *fundamental right* and the child should be able to make an informed decision as to whether he wishes to appeal." (emphasis added)). Rodriguez testified that had he known he was entitled to a court-appointed attorney, he might have filed a timely appeal.

**A.    Laches**

We first address whether Rodriguez's application for habeas corpus relief should be barred by laches. The doctrine of laches is defined as "neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." *Carrio*, 992 S.W.2d at 487 n.2. In *Carrio*, the court of

---

[3] The State attempts to characterize Rodriguez's application as only a complaint that the trial court violated the Texas Family Code and thus not a cognizable ground for habeas corpus relief. We note that Rodriguez argues on appeal that "strict adherence to the statutory rights of juveniles must be observed"; however, Rodriguez also states on appeal that because of the court's error in failing to admonish him on his right to appeal and "associated rights" according to the Texas Family Code, he was denied his right to appeal. Further, Rodriguez states in his application that the "applicant was denied the right of appeal." Thus, we interpret his application as a complaint that he was denied his right to appeal because of the trial court's alleged failure to admonish him and his guardian, not merely that the trial court violated the Texas Family Code.

4

criminal appeals stated that the doctrine of laches is a theory that may, and should be, employed in the determination of whether to grant relief in cases filed under article 11.07 of the Texas Code of Criminal Procedure. *Id*. at 488. Article 11.07 establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death. TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2007). This is a civil case to which article 11.07 does not apply;[4] however, because the nature of Rodriguez's application is sufficiently similar to those made under article 11.07, we will apply the three-part test set forth in *Carrio* to this case. *See id*.

When asserting that relief should be denied on the basis of laches, it is the burden of the State to (1) make a particularized showing of prejudice, (2) show that the prejudice was caused by the applicant having filed a late application, and (3) show that the applicant has not acted with reasonable diligence as a matter of law.[5] *Carrio*, 992 S.W.2d at 488. It is important to

---

[4] The procedures in article 11.07 are available only after "final conviction." *See* TEX. CRIM. PROC. ANN. art. 11.07; *Ex parte Valle*, 104 S.W.3d 888, 889 (Tex. Crim. App. 2003). Juvenile adjudications are not "convictions"; thus, all juvenile adjudications remain civil cases unless transferred to a criminal court. *See Valle*, 104 S.W.3d at 889–90.

[5] The court of criminal appeals derived this three-part test from federal Rule 9(a) governing section 2254 federal cases and codifying the equitable

5

note that length of delay alone will not constitute either unreasonableness of delay or prejudice; the doctrine of laches concerns prejudice, not mere passage of time.  *Id*. at 488, 488 n.3.

The State argues that it has been prejudiced by the eleven-year delay between the adjudication of delinquency and the filing of the application for writ of habeas corpus because it was unable to properly respond to Rodriguez's claim.  The State specifically points out that no record of the trial transcript was found and that the court reporter during Rodriguez's trial had already disposed of the audiotapes of the trial.  The court reporter testified that he kept the audiotapes until approximately six months before the hearing, which he claimed was longer than he was required to by law.

Additionally, the State argues that the defense counsel at Rodriguez's trial did not have a clear recollection of whether the trial court judge admonished Rodriguez and his aunt—Rodriguez's guardian at the time of trial—concerning Rodriguez's rights on appeal.[6]  Counsel stated, however, that he suspects that

---

doctrine of laches.  *See Carrio*, 992 S.W.2d at 487.  The Court noted that it was not prohibitive that Texas did not have a statute or rule comparable to Rule 9(a) because laches is an equitable common law doctrine.  *Id* at 488.

[6] Defense counsel specifically recalled that *he* twice discussed with Rodriguez his rights on appeal, including that Rodriguez was entitled to a court-appointed attorney and a free copy of the trial transcript.  Rodriguez testified that he did not recall counsel telling him that he had a right to a court-appointed

the trial court judge gave admonishments regarding Rodriguez's rights on appeal because the trial court gave counsel two documents for Rodriguez to sign and state whether he wanted to appeal the case. Counsel testified that Rodriguez signed one of the documents on the day he was adjudicated delinquent and stated that he did not want to appeal the verdict.[7] Rodriguez also testified at the hearing that he signed the document stating that he did not wish to appeal the case. Rodriguez stated that he had no money to hire an attorney at that time and that counsel told him that there was no reason to appeal.

The State argues further that Rodriguez was unable to accurately recall the exact circumstances concerning the admonishments. Rodriguez first stated that the trial court judge did not admonish him on his rights on appeal, but later on cross-examination, Rodriguez said, "I don't know if he—if he did—if he did or didn't tell me." It is not entirely clear from the record if Rodriguez was referring to counsel or the judge when he said, "he." In any event, when asked

---

attorney.

[7] The documents were never filed as part of the Clerk's Record at the adjudication trial. The documents were admitted as exhibits at the habeas corpus hearing although they were not attached to the Reporter's Record and are thus not part of the appellate record. The State does not argue on appeal that the notice of appeal signed by Rodriguez is a binding waiver of appeal. *See* TEX. FAM. CODE ANN. § 51.09 (Vernon 2002) (waiver of rights).

again whether the judge gave admonishments to him and his family, Rodriguez stated that "[i]t could have happened."

Based on the State's argument set forth above, we hold that the State has not made a particularized showing of prejudice. The State relies mainly on the absence of a trial transcript and on Rodriguez's and counsel's inability to recall whether the trial court admonished Rodriguez and his aunt. However, if the State chooses to rely on the absence of the trial record, it must show that the substance of the record is unavailable from other sources. *See Walters v. Scott*, 21 F.3d 683, 688 (5th Cir. 1994);[8] *see also Ex parte Elliff*, No. WR-64223-01, 2006 WL 1545499, at *1 (Tex. Crim. App. June 7, 2006) (order not designated for publication) (holding that the applicant's habeas application filed twenty three years after he was convicted was not barred by laches in part because the assistant district attorney was still available to address claims made in the applicant's case).

The State may have shown that counsel was now unable to remember the exact events of the adjudication trial and that Rodriguez gave conflicting testimony regarding the trial court's actions, but it has not shown that the

---

[8] In *Carrio*, the court of criminal appeals cited *Walters* for authority that the type of prejudice the State must show is prejudice in its ability to respond to the allegations in the petition or application for habeas corpus. 992 S.W.2d at 488.

8

information was unavailable from other sources. For example, the State has not shown that the prosecutors of the case were unavailable or unable to testify regarding the issue of admonishments. Further, the State elicited testimony that it is the regular course of practice for the Tarrant County Juvenile Probation Department to have a probation officer in the courtroom at all times when there are proceedings taking place in a juvenile case. The State, however, failed to show whether the probation officer assigned to Rodriguez's case was available to testify.

The State has also not sufficiently shown that the trial judge was unable to testify. It argues that the trial judge now suffers from "age related memory problems," but the only testimony to that effect came from the court reporter who stated that he had heard that the judge now has memory problems but that he had not noticed it himself. This general allegation by the State and the ambiguous testimony regarding the allegation are not sufficient to prove the requisite particularized prejudice. But even taking that allegation as true, the State has failed to prove when exactly the judge began suffering from such memory problems. Thus, if the judge's memory began to diminish shortly after the adjudication trial, Rodriguez's delay in filing his application would not have *caused* that particularized prejudice. *See Elliff*, 2006 WL 1545499, at *1 (noting that because the district attorney in office at the time of the trial died

9

shortly after the trial, the State would have been equally prejudiced in its ability to respond if the applicant had filed his claim twenty years earlier).

The State has not shown that the information regarding the admonishments, presumably on the trial record, could not have been reproduced from other sources. Because the State has not made a particularized showing of prejudice, and in the case of the judge's alleged memory problems that Rodriguez's delay caused the prejudice, we reject its argument that habeas corpus relief is barred by laches and move on to the merits of Rodriguez's appeal.

**B.      Admonishments to Rodriguez and Guardian**

Rodriguez claims that the trial court failed to admonish him and his aunt that he had a right to a court-appointed attorney on appeal. It was his burden at the hearing to prove these allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995); *Ex parte Bruce*, 112 S.W.3d 635, 639 (Tex. App.—Fort Worth 2003, pet. dism'd, untimely filed). Absent a clear abuse of discretion, we accept the trial court's decision whether to grant the relief requested in a habeas corpus application. *Bruce*, 112 S.W.3d at 639. When, as in this case, the trial court does not issue findings of fact with its ruling, we must affirm if we can uphold the trial court's order on any legal theory supported by the evidence. *See Worford v. Stampler*,

801 S.W.2d 108, 109 (Tex. 1990); *Gonzalez v. State*, 148 S.W.3d 702, 706 (Tex. App.—Austin 2004, pet. ref'd).

The record of the hearing contains conflicting testimony on whether the trial court gave admonishments and on the exact details of what occurred after the jury read the verdict. We note that Rodriguez's sister, who was present at the trial, testified that the aunt did not receive information from the judge about the right to appeal. We also note that counsel testified that he suspects that the judge gave admonishments in open court because the court gave him two documents for Rodriguez to sign as notice to the court of Rodriguez's intent to appeal.

Rodriguez relies heavily on his aunt's testimony to support his argument that the judge never discussed with her Rodriguez's rights on appeal. The aunt testified at trial and in her affidavit in support of the application that the judge never directed a word to her about the appeal. In fact, Rodriguez's aunt testified that because she speaks only Spanish, the trial judge would have had to communicate with her through an interpreter, which she claims he did not do. The supervisor for the Tarrant County Juvenile Probation Department testified, however, that it is regular practice and that the Department "[tries its] best" to assign a bilingual officer to families that do not speak English to "assist and facilitate in the comprehension of the system." The supervisor stated that

11

it was also the regular course of practice for the probation officer to be in the court room at all times when there are proceedings in a juvenile's case. Moreover, the record shows that moments before she testified that the judge did not communicate with her, the aunt stated that she did not remember what happened after the verdict was read; she remembered only that she left the court room.

As for Rodriguez's testimony, he stated in his affidavit and at the hearing that the trial court judge did not admonish him on his rights on appeal. But on cross-examination, Rodriguez said, "I don't know if he—if he did—if he did or didn't tell me." Eventually he stated that the judge "could have" admonished him and his family. Rodriguez agreed that it was hard to remember what happened eleven years ago on the day of adjudication.

Even though the State was unable to prove that habeas corpus relief should be barred by laches, we acknowledge that, in some circumstances, the applicant's delay in seeking relief can prejudice the credibility of his claim. *Ex parte Young*, 479 S.W.2d 45, 46 (Tex. Crim. App. 1972). Because the record is no longer available, we are to rely solely on the memories of four individuals that were present at the trial. The testimony from these individuals is conflicting, and in Rodriguez's case, tainted with self-interest and the prospect of gaining his freedom; thus, we cannot say that the trial court abused its

12

discretion by denying the relief sought in Rodriguez's application for writ of habeas corpus.  We overrule both of Rodriguez's issues.  *See id* at 47.

### III. CONCLUSION

Having overruled both of Rodriguez's issues, we affirm the trial court's judgment.


                                        DIXON W. HOLMAN
                                        JUSTICE

PANEL B:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  June 19, 2008

13