IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-41,168-11






EX PARTE CHARLES DEAN HOOD, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM CAUSE NO. W296-80233-90 IN THE 366TH DISTRICT COURT


COLLIN COUNTY





 Cochran, J., filed a dissenting opinion in which Price and Holcomb, JJ.,
joined.


OPINION 



 I respectfully dissent to the Court's Order dismissing applicant's claim alleging that
he was denied a constitutionally fair trial because of a romantic relationship between the trial
judge and the prosecutor. I believe that, based upon newly developed facts, applicant has
satisfied the requirements of Article 11.071, § 5(a). I would remand this application to the
habeas court to make further factual findings and recommendations concerning the merits
of the claim. 

 On November 18, 2008, we remanded this application to the habeas court to gather
evidence and make recommendations on (1) whether the doctrine of laches barred
consideration of applicant's claim; and (2) whether applicant had otherwise met the dictates
of Article 11.071, § 5(a). The habeas judge complied, gathering the evidence and making
extensive findings of fact that are supported by the record. Although one might disagree
with some of those findings, I am not at liberty to disregard them when they are supported
by the record. (1) Those factual findings included the following: (2)


 Judge Verla Sue Holland of the 296th Judicial District Court of Collin County,
presided over Hood's capital murder trial.

 The elected District Attorney of Collin County, Thomas S. O'Connell, Jr.,
participated in the prosecution of Hood for capital murder.

 Judge Holland and Mr. O'Connell were involved in an intimate sexual
relationship prior to Hood's capital murder trial. (3)
 Prior to the capital murder trial-and during the appellate and post-conviction
proceedings-Judge Holland never disclosed her relationship with Mr.
O'Connell to Hood.

 During these proceedings, Mr. O'Connell never disclosed his relationship with
Judge Holland to Hood.

 Judge Holland and Mr. O'Connell took deliberate measures to ensure that their
affair would remain secret. . . . Mr. O'Connell could not recall telling anyone,
except possibly his sisters, about his romantic relationship with Judge Holland. 
Judge Holland told no one.

 Based only on rumors of an affair, (4) Hood's former habeas counsel decided to
look into the matter prior to filing the initial habeas application. In 1995-96,
Hood's investigator, Tena S. Francis, conducted extensive records research. 
She reviewed divorce records, records obtained from the Office of Elections
Administration, and case files in the Collin County District Clerk's Office. 
Ms. Francis interviewed members of Hood's defense team, attorneys
practicing in Collin County, and Judge Holland's former husband, Earl
Holland. She attempted to interview Judge Holland's bailiff, but he refused
to discuss the judge's personal life with her. She contacted the State
Commission on Judicial Conduct.

 Ms. Francis was unable to develop any concrete evidence of the affair. (5)

 On June 27, 2005, shortly before Hood's scheduled execution date, A. Richard
Ellis, former counsel for Hood, contacted Judge Holland. She refused to
comment on the allegations that she had a romantic affair with Mr. O'Connell. 
On the same day, Mr. Ellis contacted Mr. O'Connell. Mr. O'Connell denied
that he had a romantic affair with Judge Holland.

 On June 3, 2008, Hood received the affidavit of Matthew Goeller, a former
assistant district attorney in Collin County, Texas.

 Mr. Goeller's affidavit marked the first time that a former employee of the
District Attorney's Office who had worked there during Mr. O'Connell's
tenure was willing to speak on the record and under oath about the
relationship.

 Mr. Goeller stated that the romantic relationship between Judge Holland and
Mr. O'Connell was ongoing when Mr. Goeller began working at the District
Attorney's Office in 1987. Mr. Goeller could only assert that the relationship
was "common knowledge," not that he personally knew of any romantic
interactions. (6)


 


 In June 2008, counsel for Hood retained Toni Knox, a private investigator. 
She reviewed the work previously conducted by Ms. Francis and then
interviewed approximately two dozen individuals in the Collin County area
who seemed likely to have some knowledge of the Holland-O'Connell affair.

 The witnesses could only attest that they had heard rumors about the affair. (7)



 Thus, all of applicant's efforts had resulted in nothing but the development of
unsubstantiated rumors. Rumors and gossip, no matter how widespread, how detailed, or
how extravagant, are not facts. It was not until applicant obtained a court order requiring
Judge Holland and Mr. O'Connell to give depositions pursuant to Rule 202 of the Texas
Rules of Civil Procedure that he was able to establish the actual facts that underlie his claim. 


 Rule 202 permits a person to petition a court to take a deposition to perpetuate a
person's testimony for an anticipated civil lawsuit or to investigate a potential claim or suit. (8) 
Applicant contended that he had "exercised extraordinary diligence" in making his Rule 202
request, which required "painstaking research" and "substantial time and money." He
argued,

 Because counsel was unaware of anyone previously attempting . . . a [Rule
202] strategy, the chance of success was remote. An attorney exercising
ordinary care and reasonable diligence would not have felt compelled to
expend limited resources on such a speculative undertaking.

 The State argues that Civil Rule 202 has been in existence since 1999, and thus
applicant could have availed himself of it at an earlier time. But the State does not point to
any law or any instance in Texas criminal proceedings in which this rule has been invoked,
used, or allowed. Whether the 366th Judicial Court had the legal authority to order such
depositions is not before us. Suffice it to say that this procedure was a most extraordinary
and unusual one. It is surely not (and should not become) the standard by which to measure
reasonable diligence. 

 It was only when the depositions of September 8, 2008, established the fact of a
previous, sporadic, intimate relationship between the trial judge and the prosecutor, that
applicant could legitimately assert his claim. He did so in this habeas application, filed on
September 25, 2008, which we remanded on November 19, 2008.

 We remanded the case for the habeas judge to determine whether the equitable
doctrine of laches should bar applicant from raising this claim some eighteen years after his
trial when his trial attorneys admitted that they had been aware of the rumors and gossip
concerning this relationship even before the trial and consciously decided not to file a motion
to recuse. (9) 

 Habeas corpus is an equitable doctrine of relief. Laches is equally an equitable
doctrine which may, at times, preclude habeas relief. (10) The equitable doctrine of laches bars
review of a claim when the claimant has delayed in raising an issue and that delay has
prejudiced the opposing party. (11) To establish laches as a bar in a habeas proceeding, the
State has the burden to "(1) make a particularized showing of prejudice, (2) show that the
prejudice was caused by the petitioner having filed a late petition, and (3) show that the
petitioner has not acted with reasonable diligence as a matter of law." (12)

 In this case, the doctrine of laches may be disposed of on the third prong, that of
reasonable diligence. Here, it is clear that applicant's trial attorneys were aware, before the
1990 trial, of the "common knowledge" rumors and gossip concerning the personal
relationship, (13) but it seems equally clear from the habeas record that applicant's attorneys did
not know whether those rumors were true, either at the time of the trial (14) or at the time that
applicant filed his earlier habeas applications. Based upon the habeas judge's factual
findings outlining the considerable effort, time, and money that applicant spent in attempting
to verify or dispel the rumors, the habeas judge concluded that applicant had exercised
reasonable diligence in attempting to establish the factual basis of his claim. The habeas
judge also concluded that applicant's "unsuccessful efforts to obtain concrete evidence" of
the relationship could not be attributed to his failure to exercise reasonable diligence, but was
"explained by the principals' longstanding efforts to keep the affair hidden." These
conclusions are supported by the record. 

 The State filed objections to the habeas judge's findings, pointing out that the habeas
judge did not fully account for all of the evidence, such as (1) the failure of the trial attorneys
to file a motion to recuse before trial based upon the rumors, or (2) a more recent affidavit
by Mr. O'Connell. (15) The State also argues that it has made a particularized showing of
prejudice caused by applicant's delay in presenting his claim because the passage of time
"allowed Mr. O'Connell's memory to fade." (16) But, because the habeas judge has affirmed
the existence and extent of a prior romantic relationship, the State fails to show that Mr.
O'Connell's memory lapse might be determinative to the claim. 

 In sum, I would accept the habeas judge's findings of fact (though not his conclusions
of law) as being supported by the record, and I would remand this case to the habeas court
for development of the merits of applicant's claim.


Filed: September 16, 2009

Do Not Publish
1. See Ex parte Reed, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) ("in most
circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law
when they are supported by the record. When our independent review of the record reveals that
the trial judge's findings and conclusions are not supported by the record, we may exercise our
authority to make contrary or alternative findings and conclusions.") (citations omitted); see also
Ex parte Baker, No. AP-76,031, ___ S.W.3d ___, ___ , 2009 Tex. Crim. App. LEXIS 517, *3
(Tex. Crim. App. April 1, 2009) (citing Reed and stating, "The trial judge entered stipulated
findings of fact, which we will defer to because they are supported by the record"); Ex parte Van
Alstyne, 239 S.W.3d 815, 817 (Tex. Crim. App. 2007) ("as a matter of course this Court pays
great deference to the convicting court's recommended findings of fact and conclusions of law, as
long as they are supported by the record, particularly in those matters with regard to the weight
and credibility of the witnesses").
2. Citations to the record are omitted.
3. Although this factual finding is literally true, it is also a bit misleading. Based upon the
sworn testimony of both of the participants, theirs was hardly the torrid relationship of romance
novels. It might more fairly be characterized as a close personal relationship that, on a few rare
occasions, dipped into intimacy. No one disagrees that those occasions ended in 1987, some
three years before applicant's trial. It was, nonetheless, a personal relationship that went much
further than the social relationship that one normally finds between professional colleagues. 
4. The habeas judge did not reference the evidence, submitted both by applicant and by the
State, that applicant's trial counsel were well aware of the rumored relationship before the 1990
trial, and that they consciously chose not to file a motion to recuse Judge Holland "in order to
avoid angering Judge Holland-who they would stand before on future cases" and because "it was
far more likely that Judge Holland . . . might make some legal error in the trial of the case that
might actually be of benefit to [applicant]." Francis Aff. dated 08/01/96; Haynes Aff. dated
03/06/09. 
5. Although Ms. Francis spoke to several attorneys who confirmed the existence of
rumors, "positive proof of the exact nature of the relationship was not available." Francis Aff.
dated 08/01/96.
6. Goeller Aff. dated 06/03/08.
7. Ms. Knox stated that "not one [of the people she had spoken to] could confirm the
relationship with concrete evidence." Knox Aff. dated 03/03/09.
8. Tex. R. Civ. P. 202.1. The rule requires the filing of a verified petition. The trial judge
"must order a deposition to be taken if, but only if, it finds that:

 (1) allowing the petitioner to take the requested deposition may prevent a failure or
delay of justice in an anticipated suit; or

 (2) the likely benefit of allowing the petitioner to take the requested deposition to
investigate a potential claim outweighs the burden or expense of the procedure."

Id. at 202.4(a).
9. As one of its conclusions of law, the habeas court asserts that "the equitable doctrine of
laches is inapplicable to inmates seeking post-conviction relief in a subsequent application
pursuant to Article 11.071 of the Texas Code of Criminal Procedure." That is inaccurate. We
would not have remanded the case to consider the issue if the doctrine of laches did not apply to
habeas corpus subsequent applications under Article 11.071. 
10. See Ex parte Carrio, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999).
11. Id. As this Court explained,

 The doctrine of laches is based upon the maxim that equity aids the vigilant and
not those who slumber on their rights. It is defined as neglect to assert right or
claim which, taken together with lapse of time and other circumstances causing
prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the
neglect for an unreasonable and unexplained length of time under circumstances
permitting diligence, to do what in law, should have been done.

Id. at 487 n.2 (quoting Black's Law Dictionary 875 (6th ed. 1990)). See also Callahan v.
Giles, 155 S.W.2d 793, 795 (Tex. 1941).
12. Ex parte Carrio, 992 S.W.2d at 488 (quoting Walters v. Scott, 21 F.3d 683, 686-87 (5th
Cir. 1994)) (emphasis in the original). I have previously argued in favor of a presumption of
laches when a habeas claim is brought more than five years after the final judgment of
conviction. Ex parte Steptoe, 132 S.W.3d 434, 440 (Tex. Crim. App. 2004) (Cochran, J.,
dissenting) (citing U.S.C.S. § 2254 Cases Rule 9(a), advisory committee notes.). I continue to
adhere to that view, but applicant has successfully rebutted it in this case.
13. Trial counsel's affidavit states that he had decided that, without definite evidence to
confirm the truth of the rumor, "there was nothing to be gained by attempting to recuse Judge
Holland from the case." Haynes Aff. dated 03/06/09. 
14. Under normal circumstances, even constitutional rights may be waived if they are not
timely asserted. The proper time to file a motion to recuse or disqualify a judge is normally
before the beginning of trial. See Freeman v. State, 125 S.W.3d 505, 513 (Tex. Crim. App.
2003) ("To be timely filed, a motion to recuse must be filed at least ten days before trial. Tex. R.
Civ. P. 18a(a)"). But that rule can apply only when the party does know, or by the exercise of
reasonable diligence could have discovered, the facts that underlie recusal or disqualification. Id. 
Under Rule 18a(a), the recusing party must verify his pleading, and the motion 

 must state with particularity the grounds why the judge before whom the case is
pending should not sit. The motion shall be made on personal knowledge and
shall set forth such facts as would be admissible in evidence provided that facts
may be stated upon information and belief if the grounds of such belief are
specifically stated.

Id. And just what personal knowledge or facts could trial counsel have sworn to? Rumors? 
What "information and belief" could they assert? "Common knowledge" rumors circulated by
Attorney X and Y? Such a recusal motion filed under Tex. R. Civ. P. 18b would appear to be
deficient on its face and might result in sanctions for filing a frivolous motion under Tex. R. Civ.
P. 13.
15. The State argues that applicant could have either raised the issue pre-trial based on the
rumors about the affair and the knowledge that Mr. O'Connell would participate in the trial, or in
numerous previous writ applications based on the defense investigation into the rumors. The
State also argues that applicant did not need the participants' admissions or evidence from a
witness with personal knowledge of the relationship to raise the claim. Instead, applicant was
only required "to plead those facts, which, if true, could provide a basis for relief." Yes, but the
facts contained within a habeas application must be sworn to as based upon personal knowledge,
not rumor, speculation, or conjecture. Indeed, we had dismissed applicant's previous filings
which had raised this same claim because they were based on "common knowledge" and
"rumor," not fact. 
16. In his September 8, 2008, deposition, Mr. O'Connell was uncertain about when his
longstanding personal relationship with Judge Holland became more intimate and when that
intimacy ended. In a later affidavit, he states that he does not disagree with Judge Holland
concerning "any specific dates" that she mentioned in her deposition. O'Connell Aff. dated
03/05/09. So, taking Judge Holland's deposition as accurate, any intimacy ended approximately
three years before applicant's trial. The remoteness of the intimate relationship certainly does
bear upon the merits of the claim, but it does not bear upon whether laches bars consideration of
the claim.